HEUER, Respondent, v. HEUER, Appellant.

*April 7—May 5, 1959.*

For the appellant there were briefs by *Lowry & Hunter,* and oral argument by *Richard N. Hunter* and *Willis J. Zick,* all of Waukesha.

For the respondent there was a brief by *Ferdinand A. Glojek* of West Allis, attorney, and *Clayton A. Cramer* of Waukesha of counsel, and oral argument by *Mr. Cramer* and *Mr. Glojek.*

BROADFOOT, J.   Upon the trial the plaintiff first testified to her marriage to Franklin G. Heuer and that they were married at the time of his death. The policy, which was in the possession of the defendant, was produced by her attorney for the purpose of the trial and was received in evidence. The plaintiff then presented documents to show that she was the last-named beneficiary of the policy and was such beneficiary at the time of Mr. Heuer's death.

The defendant testified at length. In substance she testified that at the time of her marriage to Mr. Heuer she was a schoolteacher in Milwaukee and she continued to teach during all of the time they were married. At the time of the marriage Mr. Heuer was employed by a brokerage firm in Chicago. She had accumulated savings of approximately $16,000 and she opened an account in her sole name with the brokerage firm; that Mr. Heuer had control of the management of this account; that in January, 1937, her investments had appreciated in value and she directed her husband to sell. He thought the securities would go higher but instead the price thereof began to go down and, although at the time they were sold she made a profit of approximately $19,000, she felt she had lost a substantial amount of profits because the securities had not been sold at the high point. After the securities had been sold her husband told her he was going to take out an insurance policy for her in lieu of the money he had lost. In the spring of 1938 he told her he had taken out such a policy with

the Travelers Insurance Company; that he gave the policy to her, stated that she would always have it, and if he died the policy and her teacher's pension would keep her as long as she lived. She placed the policy in a dresser drawer in the bedroom occupied by the parties and it remained there until July, 1943, when they moved to Chicago. Mr. Heuer then took the policy and placed it with other papers in a safe-deposit box in Chicago which was rented in his own name and to which she did not have access. In September, 1946, he returned the policy to her. She retained possession of the policy from that time on until she produced it at the trial. At the time of the divorce in Nevada Mr. Heuer paid to her, and she accepted, the sum of $8,000 in full settlement of property rights. No mention was made of the insurance policy at that time. On October 12, 1954, Mr. Heuer wrote her and requested that she return the insurance policy to him. She did not do so and stated that this was the only request he had made for the return of the policy. Mr. Heuer paid all of the premiums on the policy from the date of the divorce until the date of his death. The defendant testified that she had paid some of the premiums during the period of their marriage.

Mrs. Elsie Knocke, a cousin of the defendant, testified that while she was visiting the Heuer home in Milwaukee in January, 1939, Mr. Heuer told her he had lost his wife's hard-earned money but was going to do something for her in return; that he had taken out an insurance policy and turned it over to her and in case he should die she would get so much back per month. Mrs. Knocke also testified that in 1945 when the Heuers were visiting the Knocke home in Michigan she heard a conversation between Mr. Knocke and Mr. Heuer in which Mr. Heuer stated that he had taken out an insurance policy and turned it over to Eva.

Mr. Knocke also testified to a conversation he had with Mr. Heuer during a visit at the Knocke home and that

Mr. Heuer stated he was making up a loss to Mrs. Heuer in part by a life insurance policy he had given to her. He did not remember the name of the stock that was sold at a loss.

All of the testimony of the defendant relating to conversations and transactions with the deceased was objected to as being incompetent under the provisions of sec. 325.16, Stats. The testimony was received subject to the objection. In rebuttal the plaintiff testified to certain conversations with Mr. Heuer during his lifetime in which the insurance policy was discussed. This was objected to by the defendant on the ground that the plaintiff was incompetent to testify to said conversations under the provisions of the same statute.

The trial judge wrote and filed a long memorandum decision in which he first ruled on the competency of the evidence. He concluded, largely on the basis of the decision in the case of *Ward v. New York Life Ins. Co.* 225 N. Y. 314, 122 N. E. 207, that the testimony of the defendant was competent but that the testimony of the plaintiff was not. In view of the findings of the trial court, which we affirm, it is unnecessary for us to pass upon its ruling on the competency of the witnesses to testify to conversations and transactions with a deceased person. To anyone interested in that question we commend the careful analysis made by the trial court in its memorandum decision.

After ruling on the admissibility of the evidence the trial court then determined that the defendant had failed to produce evidence sufficient to establish a gift from Franklin G. Heuer to herself as donee of the life insurance policy or the proceeds thereof and that no gift of said life insurance policy or the proceeds was in fact made by the deceased to the defendant.

It is conceded that under the case of *Opitz v. Karel,* 118 Wis. 527, 95 N. W. 948, a life insurance policy may be

the subject of an *inter vivos* gift. The defendant contends that her testimony was undisputed and that it conclusively established that the deceased made a valid gift of the insurance policy to her in 1938. She further contends that the testimony of Mr. and Mrs. Knocke by itself was sufficient to establish all of the essential elements of the gift. She contends that there was a strong motive for the making of the gift because of her loss of profits and argues that the possession of the insurance policy by the defendant during the lifetime of the deceased created a strong inference of a gift. She contends that the trial court erred in disregarding the undisputed testimony and in drawing inferences that are wholly without foundation in reaching the conclusion that it did.

The credibility of witnesses and the weight to be given to testimony are within the province of the trier of the facts. Where testimony is not in dispute but permits the drawing of different inferences therefrom the drawing of such permissible inferences is an act of fact finding. In the case of *Davies v. J. D. Wilson Co.* 1 Wis. (2d) 443, 479, 85 N. W. (2d) 459, this court quoted from 32 C. J. S., Evidence, p. 1094, sec. 1038, as follows:

"The common view is that evidence not directly contradicted is not necessarily binding on the triers of fact, and may, in proper circumstances, be disbelieved and given no weight, in whole or part, especially where the witness is a party or otherwise interested, some authorities holding that, in determining the legal significance of evidence, the testimony of interested parties is not to be regarded as undisputed."

In analyzing the testimony of Mr. and Mrs. Knocke the trial court said:

"A reading of the testimony of Mr. and Mrs. Knocke discloses that both witnesses were vague and uncertain in their statements. Mr. Knocke was unable to remember the

name of the stock in the sale of which the defendant allegedly lost money. He merely stated that the deceased said 'that he had made up to Mrs. Heuer that loss in part by this—by a life insurance policy that he had given to her.' "

In passing upon the weight to be given to the testimony of the defendant, the trial court cited one of the rules to be applied from the *Ward Case, supra,* page 322, as follows:

"The general rule as to weight and quality of evidence is no different in one case than in the other. In applying the rule and test to specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it. This is what we construe the expressions in the opinions to which we have referred to mean."

We think the above is a correct statement of a general rule. In addition the trial court had the duty of considering the interest of the witnesses in the litigation. The trial court was impressed by the fact that no mention was made of the insurance policy at the time of the divorce. The inference he drew therefrom was that there was no need of considering the policy because the defendant was no longer the beneficiary and had no further interest in it. The defendant contends that the only proper inference to be drawn therefrom was that it was unnecessary to mention the insurance policy because she was already the owner of it by virtue of the *inter vivos* gift.

Since different inferences could be drawn therefrom it was for the trier of the facts to select the inference to be followed. The trial court was also impressed by the fact that Mr. Heuer paid the premiums on the insurance policy with his own funds after the divorce was granted. In view

of the marital difficulties between the defendant and Mr. Heuer prior to and at the time of the divorce, it seemed rather incredible to the court that Mr. Heuer would continue to make premium payments after the divorce and after he had made a property settlement. The court further relied upon the fact that the change of beneficiary to his sister and later to the plaintiff was inconsistent with the claim that he had made an absolute gift of the policy. In connection with other circumstances the trial court felt that the testimony did not establish that Mr. Heuer had turned over dominion of the policy to the defendant. Originally it was kept where it was accessible to either party. Later he took it to Chicago and deposited it in his own safe-deposit box, whereas the defendant had a safe-deposit box of her own in Milwaukee. In addition, the demand for a return of the policy in 1954 was inconsistent with the testimony that an absolute gift had been made.

The trial court carefully reviewed the testimony in the light of the proper rules of law. This is indicated throughout its carefully drawn memorandum decision. The findings are not against the great weight and clear preponderance of the evidence. In so far as the inferences were drawn from the testimony, they were permissible inferences and were an act of fact finding.

*By the Court.*—Judgment affirmed.